155 P.3d 302 (2007)
Pamela BICKFORD, Appellant,
v.
STATE of Alaska, DEPARTMENT OF EDUCATION AND EARLY DEVELOPMENT, and Shirley J. Holloway, Commissioner of Education, Appellees.
No. S-11731.
Supreme Court of Alaska.
February 9, 2007.
As Amended on Denial of Rehearing April 10, 2007.
*303 Pamela L. Bickford, pro se, Anchorage.
Stephen C. Slotnick, Assistant Attorney General, and David W. Márquez, Attorney General, Juneau, for Appellees.
Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*304 OPINION

BRYNER, Chief Justice.
I. INTRODUCTION
Pamela Bickford submitted an administrative complaint to the Alaska Department of Education and Early Development, alleging that the department had violated the Individuals with Disabilities Education Act (IDEA) by declining to decide an earlier complaint of hers unless she resubmitted a clarified version. After investigating the new complaint, the department ruled that Bickford's original complaint had been properly rejected. The main issue Bickford now appeals is whether the department violated the IDEA by rejecting her original complaint instead of deciding its merits. Because the first complaint raised issues beyond the department's jurisdiction and failed to specify whether Bickford meant to file it as a civil action, a request for an IDEA due process hearing, or an IDEA administrative complaint, we hold that the department properly returned it to Bickford for clarification.
II. FACTS AND PROCEEDINGS
A. Summary of Statutory and Regulatory Framework
Before we describe the events that led to this appeal, it will help to summarize the legal framework in which those events occurred. This case centers on the department's compliance with the IDEA, a federal law dealing with special education of children.[1] The IDEA requires any state receiving federal funds for special education to adopt and enforce laws and regulations complying with the IDEA's requirements.[2] Alaska receives IDEA funding and must therefore comply with its requirements. The IDEA also creates various procedures designed to allow parents and other interested parties ways to ensure state compliance with the Act's requirements. Two of those procedures are particularly relevant here: complaints for due process hearings and administrative complaints.
1. Complaints for due process hearings
The IDEA provides that any parent who believes that a school has misidentified, misevaluated, improperly placed, or otherwise denied a free and appropriate public education to a qualifying child has a right to file a complaint for an "impartial due process hearing."[3] These hearings are designed to focus on disputes concerning discrete decisions involving specific children and the children's parents; they are formal adjudicatory proceedings in which parents and children have the rights to counsel, to present evidence, and to call, confront, and compel the attendance of witnesses.[4] Due process hearings are also required to be expedited: once a parent asks for a hearing, a hearing officer has only forty-five days in which to issue a final, written decision.[5] The IDEA gives states the option of specifying whether due process hearings are the responsibility of *305 local school systems or the state system.[6] Alaska has chosen to require complaints for due process hearings to be made to the local district from which the complaint arises.[7]
2. Complaints for administrative investigations
The IDEA separately entitles any interested persons or groups to initiate investigations of compliance with the IDEA by submitting an informal complaint to the state educational agencyin Alaska, the Department of Education.[8] When it receives a complaint for an administrative hearing, the department must carry out an independent on-site investigation, give the complainant an opportunity to supply additional information about the allegations contained in the complaint, determine whether a violation of the IDEA has occurred and, within sixty days of accepting the complaint, issue a written decision supported by factual findings and conclusions of law, as well as an explanation of its reasons.[9] The department's final decision must also "include . . . [p]rocedures for effective implementation of the [agency's] final decision," including, if needed, "technical assistance activities, negotiations, and corrective actions to achieve compliance."[10]
B. Bickford's First Complaint
Pamela Bickford is the mother of a student once identified by the Anchorage School District as learning disabled. In the fall of 1998, she came to believe that the school district was misusing testing procedures for evaluating special learning disabilities. On October 9, 1998, Bickford mailed a document entitled "Complaint and Request for Due Process Hearing" to the board and commissioner of education, and to the board and superintendent of the Anchorage School District. The complaint's caption listed eight individuals as plaintiffs, including Bickford, and asserted that the plaintiffs were acting "on their own behalf and on behalf of a class of similarly situated persons." The caption named as defendants the Anchorage School Board and School District Superintendent as well as the Alaska State Board of Education and the Alaska Commissioner of Education. Bickford was the only plaintiff who had actually signed the complaint.
Bickford's complaint set out twenty separate counts accusing the Anchorage School District of violating IDEA student-evaluation procedures,[11] and of more broadly violating section 504 of the Rehabilitation Act,[12] the Americans with Disabilities Act,[13] section 1983 of the Civil Rights Act,[14] and the Fourteenth Amendment to the United States Constitution. The complaint sought various forms of relief for these violations, including injunctive relief, costs and fees, and "[s]uch other or additional relief as this Court may deem just and proper." Although the format of the complaint, the violations it alleged, the relief it requested, and the formal certificate of service that accompanied it all seemed to suggest that it might have been drafted for filing as a civil court action, the complaint failed to specify where it was actually meant to be filed.
After reviewing the complaint, the school district thought that it might be a draft legal complaint but also recognized that it might *306 have been meant in part as a request for a due process hearing under the IDEA.[15] As a precautionary matter, the district appointed a hearing officer to oversee the complaint, as required under applicable regulations governing requests for due process hearings. Bickford later informed the hearing officer that she did not intend to proceed with her due process hearing request, so no hearing was held.[16]
Meanwhile, the department had referred Bickford's complaint to the attorney general's office; after reviewing it, Assistant Attorney General Tom Dahl returned it to Bickford with a letter asking for clarification "because of several procedural problems that it presents." Dahl described three particulars that needed to be clarified.
Dahl began by observing that only Bickford had signed the complaint. He asserted that complaints must be signed by all complainants "or by their attorney." Since the state bar association had informed him that Bickford was not an attorney, Dahl pointed out that she was not entitled to bring an action on behalf of anyone other than herself.
Next, Dahl noted that no court had been specified in the complaint, but that Bickford had requested injunctive relief under the federal rules of civil procedure. If the complaint was intended to initiate a federal civil proceeding, Dahl asked that Bickford name the federal court she had in mind and clarify what federal question she was presenting. If, on the other hand, Bickford intended the complaint to initiate proceedings "either under 34 C.F.R. § 300.506 [mediation procedure] or 4 AAC 52.500 [the state code provision governing IDEA administrative complaints[17]]," Dahl informed her that she would have to "restate the claim on behalf of [her] child and [herself] alone, and ask for the state to investigate the complaint as provided in the [latter] regulation."
Last, Dahl noted that if Bickford had intended her complaint to initiate a civil action, neither state nor federal courts would allow her to sue the school board without first exhausting administrative procedures. If, on the other hand, Bickford was attempting to request a due process hearing, Dahl claimed that the school district, not the department, was the "proper defendant" as, under federal law, the state board's role was limited to hearing appeals from local districts' final decisions.
Indicating that these deficiencies made it difficult to determine how Bickford wanted to proceed, Dahl informed her that the department would take no further actions "unless and until" Bickford clarified her intentions.
Bickford responded to Dahl's letter with a letter dated December 7, 1998, signed by Bickford and seven other parents, addressing each of Dahl's enumerated points.
Bickford acknowledged that she was not an attorney, and she wrote that it had not been her intent to act as one. She noted that a 1993 brochure, "Your Rights as the Parent of a Child Who Experiences a Disability," featured a section entitled "Complaint Procedure" that "cite[d] federal regulations" and provided:
The department will review, investigate and take appropriate action on:
300.662. . . . written complaints alleging that a district or other educational agency is acting contrary to [state] or federal requirements for special education.
It was Bickford's understanding, she clarified, "that the complaint procedure was informal and parent friendly . . . [t]he form of the complaint and identification of who may submit a complaint" not being identified. She then accused the department of having improperly *307 "dismiss[ed]" her complaint on the grounds that she had failed to satisfy a procedural requirement that neither she nor any of the other parents ever knew existed:
[Y]our dismissal of our complaint without giving us the opportunity to satisfy your requirement that all persons party to the complaint submit an actual signature acknowledging their joining the complaint, sets out a standard of which we were not informed.
Second, Bickford clarified that no court had been identified in her complaint because "the State [IDEA Administrative-]Complaint Procedures, 34 CFR §§ 300.660-300.662, was the intended jurisdiction of our complaint." (She did not acknowledge, though, that this was the first time she had explicitly invoked 34 C.F.R. §§ 300.660-.662 (1998)).
Finally, Bickford claimed that the department was a proper defendant in her action because the department qualified as an "other educational agency" as the term was used in 34 C.F.R. §§ 300.660-.662 (1998), and because the state had a federal duty to monitor local compliance with the IDEA.
Bickford summed up by asserting that her action was a class action, that Dahl had failed to acknowledge that the state had "mandated complaint procedure[s]," and that she and the other parents believed that they had exhausted the administrative remedies available to them. Based on these assertions, Bickford indicated that she would not resubmit a clarified complaint to the department but instead planned "to file this complaint in District Court in Anchorage." Evidently, Bickford did file a suit against the department and school board in the United States District Court for the District of Alaska; apparently the suit was dismissed and the United States Court of Appeals for the Ninth Circuit eventually affirmed the dismissal.[18]
C. Bickford's Second Complaint
On May 24, 1999, Bickford filed a second complaint entitled, "Complaint and Request for Due Process Hearing for Violations of the Individuals with Disabilities Education Act." The complaint included as plaintiffs (and was signed by) all eight of the plaintiffs from Bickford's original complaint; but the only defendant it named was the department's Office of Special Education Programs. In the complaint, Bickford alleged that the way the department had handled her original complaint had violated the IDEA. Though her allegations were largely limited to IDEA violations, she also requested that the department "issue a finding that the Alaska Department of Education has not fulfilled its duty to provide procedural protections under Section 504." Bickford also mentioned the ADA in her second complaint but did not allege any ADA violations, and did not request that the department find that Assistant Attorney General Dahl's actions had violated the ADA.
The department construed the new filing to be a complaint seeking both a due process hearing and administrative investigation; it thus responded by asking for several clarifications. It noted that administrative complaints are to be distinguished from complaints for due process hearings and that the nature of Bickford's complaint therefore needed to be clarified. It also asked Bickford to make clear whether she was bringing her new complaint on behalf of the named complainants, or whether the listed parents were asserting separate complaints on behalf of their own children. In addition, the department noted that Bickford's new complaint seemed to include allegations of ADA and section 504 violations, which the department had no authority to address. Finally, it sought to confirm its understanding of "the issue(s) to be the subject of the complaint investigation" stating that it believed the issue to be "[d]id the Department follow the complaint procedures as required by the IDEA?"
Bickford replied with a two-page letter in which she clarified that she was, indeed, requesting both a "complaint investigation" and a "due process hearing" and had styled the new complaint as she had "so as to give the *308 Department maximum flexibility in addressing [her] concerns." Bickford also "welcome[d]" the state's remarks regarding the ADA and section 504, since they had confirmed for her that those issues could only be resolved in a federal court. Finally, Bickford confirmed that she understood the department's position to be that her complaint only sought an investigation of one issue"Did the Department follow the complaint procedures as required by the IDEA?"but did not confirm that this comported with her own understanding of the complaint.
Bickford and the department then held a teleconference to further settle matters. During the teleconference, Bickford abandoned her request for a due process hearing, and agreed that the only issue to be investigated was whether the department had violated IDEA complaint procedures. The department thus treated Bickford's second complaint as being solely an administrative special education complaint filed under its regulations implementing the IDEA.[19] Accordingly, it appointed an investigator, Betty Barats, to perform the required investigation of Bickford's administrative complaint.
In performing her investigation, Barats discerned six specific allegations of wrongdoing in Bickford's administrative complaint:
[1.] A due process hearing was not completed within 45 days of the written request.
[2.] A written decision was not received by the complainant within 60 days.
[3.] In spite of numerous calls to the State Department of Education, not one parent received correspondence about the complaint.
[4.] The letter from the Assistant Attorney General did not address the merits of the complaint.
[5.] The Assistant Attorney General did not respond to a letter signed by eight parents on December 7, 1998.
[6.] The State Department of Education did not have appropriate written policies, practices and procedures for the filing and handling of complaints.
Barats issued twenty-two findings of fact addressing these points but found no evidence of a "violation of law," though she concluded that Dahl had made one "misleading" statement in his letter to Bickford. Barats also determined that it was "reasonable to interpret the intent [of Bickford's complaint] as either a request for a Due Process Hearing or notification of a legal action" and she closed her report with a recommendation that Bickford re-submit her complaint in a less confusing form:
The complainant chose to use a format that is common in the legal arena resulting in confusion around the intent of the complaint. There are procedures in place for the handling of such complaints, and the facts uncovered in this investigation do not present evidence of violation of law.
This investigator would encourage the complainant to re-submit the complaint to the appropriate department, being sure to follow the instructions provided in the Notice of Procedural Safeguards: Parental Rights for Special Education booklet.
Commissioner of Education Richard S. Cross adopted Barats's decision and dismissed Bickford's complaint.
D. Bickford's Appeal to the Superior Court
Bickford appealed the commissioner's decision to the superior court. On appeal, she initially moved for a remand, asserting that the commissioner had improperly issued a decision without affording her a right to a hearing. The superior court granted her motion and remanded the case to the department with directions "to receive testimonial and documentary evidence that [Bickford] seeks to include in the record." Although the department conducted a hearing on remand, "no new evidence was disclosed with which to supplement the record [and][n]o additional documents were admitted into evidence."
Bickford then moved for summary judgment in the superior court. Her motion sought to expand the scope of the appeal to include not just the procedural issues decided *309 in response to her second complaint but also the procedural issues regarding the original complaint. Thus, in addition to challenging the department's refusal to accept her original complaint, Bickford asked the superior court to remand the case to the department and require it to address the merits of the issues raised in the original complaint. In support of her motion for summary judgment, Bickford submitted a "Corrected" and expanded version of the complaint she originally filed on October 9, 1998.
After considering the department's opposition, Superior Court Judge John Suddock affirmed the commissioner's decision to dismiss Bickford's case, determining that investigator Barats's findings and conclusions were "supported by substantial evidence" and "not contrary to law." The court declined to address Bickford's motion to grant summary judgment on new issues not considered and decided by Barats, explaining that "summary judgment is not permitted under the Appellate Rules" and that the documents offered in support of the new issues were "outside the scope of this court's order allowing supplementation of the record and supplemental briefing."
After considering a motion by Bickford asking the court to reconsider various aspects of its ruling, the superior court summarily denied the motion, and Bickford filed this appeal.
III. DISCUSSION
A. Standards of Review
Bickford argues that the superior court was wrong to dismiss her second complaint because the department mishandled her original complaint. In particular, she now argues that when the department returned her original complaint to her, it both violated IDEA, ADA, and section 504 complaint resolution-procedures, and denied her procedural due process. She also argues that the superior court did not have jurisdiction to hear this dispute. In response, the department argues that no provision of federal law governed the processing of Bickford's ambiguous complaint and that the department's decision to ask Bickford to clarify her intent was entirely proper. It argues that the superior court had jurisdiction to hear Bickford's administrative appeal, and it asks us to affirm the superior court's decision dismissing Bickford's case because Commissioner Cross's decision to adopt investigator Barats's report was not an abuse of discretion.
When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review the decision of the administrative agency.[20] For questions of fact, we apply a "substantial evidence" standard, asking whether an agency's findings are "supported by `such relevant evidence as a reasonable mind might accept to support a conclusion.'"[21] For issues of law not involving agency expertise, "such as statutory interpretation and constitutional issues," we utilize a "substitution of judgment" or "independent judgment" standard.[22] Under this standard, we are free to substitute our own judgment for the agency'seven if the agency's decision had a reasonable basis in law[23]and will adopt rules of law most persuasive in light of reason, precedent, and policy.[24]
B. Bickford's IDEA Claims
1. Jurisdiction
As an initial matter, Bickford contends that the superior court lacked jurisdiction to hear her administrative appeal. First, she argues that the superior court's jurisdiction was defective because the Department of Education impermissibly removed her complaint from its "primary jurisdiction" by assigning it to an assistant *310 attorney general, Dahl, who was "not under the supervision, direction, or control of the Commissioner of Education, but the Attorney General." Second, Bickford also argues that the superior court's jurisdiction was defective because she never exhausted her administrative remedies and because no complaint investigator ever issued a final decision on the merits of her complaint.
We disagree. First, there is no merit to Bickford's "primary jurisdiction" argument. At base, Bickford appears to be arguing that the Department of Education should not have been allowed to involve lawyers from the attorney general's office in the resolution of her complaint; that assertion is plainly incorrect. Second, Bickford's exhaustion argument is also unpersuasive. Bickford appealed a final agency determination to the superior court. Once the Department of Education had completed its investigation of Bickford's administrative complaint, no additional administrative procedures were available to her. The superior court was therefore properly positioned to hear her appeal.[25]
2. Challenges to rejection of Bickford's original complaint
The core of Bickford's appeal is that the department violated the IDEA by returning her original complaint to her without considering its merits. The department argues that Bickford's original complaint was too ambiguous to even trigger the IDEA and it contends that its ambiguity warranted the department's request for clarification.
As already stated, Bickford's administrative complaint was assigned to investigator Barats. As part of her investigation, Barats conducted interviews with Bickford, Assistant Attorney General Dahl, three members of the Department of Education, two special education officers employed by the Anchorage School District, an attorney, another parent named in the complaint, and a secretary of the State Board of Education. She also reviewed the documents and correspondence described in our facts and proceedings section, state court rules, federal regulations, and the department's complaint-intake form.
Barats's decision considered six specific IDEA allegations Bickford raised in connection with the rejection of her original complaint and found that the record failed to support any of these claims. The Commissioner of the Department of Education upheld this determination. We must consider whether the law and the record support Barats's decision.
First, Barats addressed the contention that no due process hearing was completed within forty-five days of Bickford's written request. Barats found that no violation had occurred both because (a) the Anchorage School District attempted to conduct a due process hearing but Bickford advised it that she no longer wanted the hearing; and (b) the department was not the proper party from which to request a due process hearing. Regarding the school district's efforts, the record confirms that the district did indeed attempt to conduct a due process hearing and that Bickford in fact did tell the district that she no longer wanted a hearing. As to the department's failure to conduct a due process hearing, Bickford fails to establish that it had a legal obligation to do so.
Federal law leaves states free to enact laws determining whether due process hearings "shall be conducted by the State educational agency or by the local educational agency."[26] Alaska state law squarely assigns the duty to local school districts by recognizing that there are only two parties to a due process hearingschool districts and parentsand by specifying that a hearing may be requested by serving the opposing party: in other words, parents requesting due process hearings must make the request to the district.[27]
*311 The second allegation Barats considered involved Bickford's contention that her original complaint had incorporated a complaint for administrative investigation that the department failed to decide within sixty days of its filing, as the IDEA required.[28] Barats noted that federal regulations allow states to "delay resolution of identical issues raised in a complaint while those same issues are pending in a due process hearing"[29] and concluded that it was proper for the department to take no action on Bickford's complaint, which seemed to be requesting both, pending clarification that Bickford was not pursuing a due process hearing or notification that her hearing had been completed. We find no error in this determination.
Barats next considered Bickford's contention that, "[i]n spite of numerous calls," Bickford was the only parent of the eight parents her original complaint listed as plaintiffs who received correspondence from the department about the complaint. Barats concluded that no violation of law occurred, both because (a) Bickford was the only party who signed the complaint and (b) the complaint had not been properly served on the department. We agree with the first rationale and need not consider the second.
In her original complaint Bickford failed to make clear whether she meant to file a formal civil court claim, a request for an IDEA due process hearing, an administrative complaint, or some combination of the three. Since no other plaintiff signed the original complaint and Bickford would have lacked authority to assert or represent the interests of other parents in either a court case or a formal due process hearing, it was not unreasonable for the state to communicate only with Bickford until she clarified her intentions and made suitable changes to her complaint. Bickford cites no provision of law that would have required the department to respond or send copies of responses to each of the named plaintiffs, and we are aware of no such provision. Accordingly the record discloses no error of law or fact on this point.
Fourth, Barats considered Bickford's complaint that Dahl's letter failed to address the merits of her original complaint. Barats found that although the original complaint might have been meant as an administrative complaint, it was also "reasonable to interpret the intent [of Bickford's complaint] as either a request for a Due Process Hearing or notification of a legal action." Barats concluded that, given this ambiguity, Dahl could reasonably determine that "the appropriateness of the procedures being followed . . . were the only `merits' that could be addressed in that early stage."
Barats did find, however, that Dahl's letter to Bickford was misleading to the extent that it directed her to amend her complaint to include only herself and her child if she intended it as a complaint for administrative investigation under 4 AAC 52.500. Barats found the instruction mistaken as a matter of law because unlike requests for due process hearings, administrative complaints under 4 AAC 52.500 need not be restricted to an individual child. Barats nevertheless concluded that, while misleading, this error "does not constitute a violation of the law." We need not decide the point: considering the remaining uncertainties in Bickford's original complaint and Bickford's December 7 letter notifying the department that the plaintiffs would be pursuing their case in federal court, we see no reasonable likelihood that Dahl's misstatement on this relatively minor point had any prejudicial effect. Accordingly, even assuming that a misstatement of the law might amount to a violation of the IDEA under some circumstances, any error here was plainly harmless.
As we have already determined above in upholding Barats's ruling on Bickford's second allegation, Dahl's decision to call for clarification instead of attempting to guess Bickford's intent was reasonable under the circumstances in all other respects.
*312 The fifth point of error Barats considered was Bickford's assertion that Dahl violated the IDEA by failing to reply to the parents' December 7 letter, which responded to Dahl's letter to Bickford and answered his questions seeking clarification of the original complaint's intent. Barats found as an initial matter that "[t]here are no requirements in [the] IDEA regarding such a letter," so Dahl's failure to respond could not have amounted to a violation of the law.
More important, Barats ruled that "[s]ince that letter expressed the complainants['] intent to file in District Court and did not request additional action by the State . . . there was no reason for a response at that time." The latter ruling is dispositive here: the December 7 letter unequivocally notified Dahl and the department that Bickford would be filing an action in federal court, would not be filing an amended complaint, and was not requesting the state to act on her original complaint as clarified in the December 7 letter. In short, the letter left no door open and no reason to respond.
The sixth allegation Barats considered was whether the department had established appropriate written policies, practices, and procedures to guide Bickford in attempting to file and pursue her original complaint. Investigator Barats found that the Department of Education had issued a "Notice of Procedural Safeguards" to parents that met "at least the minimum requirements of the law and also indicate[d] the department and address to which a complaint should be submitted." She found that Bickford had been given a copy of this document and had ample time to re-file her complaint in accordance with its instructions. Bickford has not challenged these findings on appeal, and we see no obvious error in them. Assistant Attorney General Dahl's effort to point out the original complaint's ambiguities and to obtain a clarified complaint appears to us to have been a reasonable attempt to provide precisely the guidance that Bickford claims she lacked; and her own abrupt refusal to submit an amended complaint leaves no basis for claiming prejudice from lack of earlier guidance.
C. ADA and Section 504
Bickford next claims that the state violated complaint-resolution procedures of the ADA and section 504 by returning her original complaint without addressing its merits. She further argues that the ADA and section 504 claims set out in her original complaint should be "rejoined to the IDEA claims and remanded to [the] superior court" for a ruling on the merits.
The department responds that Bickford's ADA and section 504 claims "are not part of this appeal." It also notes that Bickford's points on appeal to the superior court focused solely on IDEA claims. Moreover, the department notes that even if we did consider Bickford's ADA and section 504 claims, we would have to reject them because only the Anchorage School District could consider them in the first instance.
We agree that these claims have not properly been preserved. Bickford failed to raise these claims in her second complaint. At the investigation stage before the department, Bickford expressly agreed that Barats would investigate only whether the department had complied with IDEA procedures. Neither the department nor the superior court had occasion to address them. And as the superior court correctly determined, Bickford could not properly resurrect her original complaint in her administrative appeal to the superior court seeking review only of the department's dismissal of her second complaint. Bickford's ADA and section 504 claims are not properly a part of this appeal.
D. Due Process
Finally, Bickford also argues that the state's response to her first complaint denied her procedural due process. She argues that she should have been allowed to "amend [her] request for disparate remedies," that the department never provided her with the opportunity to correct errors, that it provided her with an inadequate description of her procedural rights, and that the department's "informal" complaint procedures and formal "due process hearing" procedures are "confusing optional avenues." *313 She suggests that each of these actions (or omissions) violates the three-part Mathews v. Eldridge[30] balancing test we have adopted to assess whether administrative actions violate due process.[31]
The department argues that Bickford "received the full process to which she was entitled." It argues that Bickford was entitled only to a guarantee that the Department of Education would take a "hard look" at her complaint, citing Laidlaw Transit, Inc. v. Anchorage School District.[32] Moreover, the department argues, the superior court actually provided Bickford with an unusual amount of process in this case by allowing her the opportunity to create a record by examining witnesses and introducing documents.
We decline to address these arguments because Bickford's due process claims are also inappropriately raised at this point. Bickford did not raise these arguments before the superior court and they are therefore beyond the scope of her appeal.
IV. CONCLUSION
For these reasons, we AFFIRM the superior court's and the department's decisions to dismiss Bickford's complaint.
FABE, Justice, not participating.
NOTES
[1] See generally 20 U.S.C. §§ 1400-1482 (2005) (establishing funding structure for state special education programs and providing for private enforcement through various administrative procedures such as cause of action in participating states through "due process hearings" and administrative complaints). Alaska provides for IDEA "due process hearings" in AS 14.30.193 and 4 AAC 52.550.
[2] 20 U.S.C. § 1411(a)(1).
[3] 20 U.S.C. § 1415(f)(1)(A) provides:

Whenever a complaint has been received under subsection (b)(6) [involving any matter relating to the identification, evaluation, or educational placement of a child or the provision of a free appropriate public education to a child] or (k) [involving placement in an alternative educational setting] of this section, the parents or the local education agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.
[4] Id. § 1415(h).
[5] 20 U.S.C. § 1415(f)(1)(B)(ii) (if local education agency has not remedied parents' complaint within 30 days parent may request due process hearing); 34 C.F.R. § 300.510(b)(1)-(2) (if agency has not resolved parent complaint within 30 days of receiving complaint a due process hearing may occur and the time line for issuing a final decision begins); 34 C.F.R. § 300.515(a)(1)-(2) (agency must submit written decision to parties within 45 days of end of 30-day period).
[6] 20 U.S.C. § 1415(f)(1)(A).
[7] AS 14.30.193(a) provides that "[a] school district or a parent of a child with a disability may request a due process hearing" and that "[a] request is made by providing written notice to the other party to the hearing." (Emphasis added.)
[8] 34 C.F.R. §§ 300.660-.662 (1998) (current version at 34 C.F.R. §§ 300.151-.153 (2006)). Unlike the due process hearing, which is expressly provided for by statute, the administrative complaint is established only in the code of federal regulations. See Lucht v. Molalla River Sch. Dist., 225 F.3d 1023, 1026 (9th Cir.2000). Alaska provides for complaints requesting administrative hearings in 4 AAC 52.500.
[9] See 34 C.F.R. § 300.661(a)(4) (1998) (current version at 34 C.F.R. § 300.152(a)(5) (2006)).
[10] 34 C.F.R. § 300.661(a) (1998) (current version at 34 C.F.R. § 300.152(b)(2)(i)-(iii) (2006)).
[11] 20 U.S.C. §§ 1412, 1414.
[12] 29 U.S.C. § 794 (2005).
[13] 42 U.S.C. §§ 12101-12213 (2005).
[14] 42 U.S.C. § 1983 (2005).
[15] In Alaska, IDEA due process hearings are governed by 20 U.S.C. § 1415(f); AS 14.30.193; and 4 AAC 52.550.
[16] In addition, the district evidently thought that Bickford might have meant to pursue an administrative complaint under the IDEA. In September 1998, based on a letter and other materials sent by Bickford in August 1998, the district had asked the Department of Education to undertake a general review of its testing procedures for compliance with state and federal law. It appears that the department undertook such a review.
[17] In Alaska, IDEA administrative complaints are governed by 34 C.F.R. §§ 300.660-.662 (1998) (current version at 34 C.F.R. §§ 300.151.153 (2006)) and 4 AAC 52.500.
[18] See Bickford v. Anchorage Sch. Dist., No. CV-98-00408-HRH (D.Alaska Feb. 3, 1999) (dismissing case without prejudice), aff'd by 208 F.3d 220 (9th Cir.2000) (unpublished table decision), cert. denied, 531 U.S. 876, 121 S.Ct. 182, 148 L.Ed.2d 125 (2000).
[19] See 4 AAC 52.500.
[20] Collins v. Arctic Builders, Inc., 31 P.3d 1286, 1288-89 (Alaska 2001).
[21] Phillip Weidner & Assocs., Inc. v. Hibdon, 989 P.2d 727, 730 (Alaska 1999) (quoting Grove v. Alaska Constr. & Erectors, 948 P.2d 454, 456 (Alaska 1997)).
[22] State, Dep't of Pub. Safety v. Shakespeare, 4 P.3d 322, 324 (Alaska 2000); Phillip Weidner & Assocs., 989 P.2d at 730.
[23] Shakespeare, 4 P.3d at 324.
[24] Phillip Weidner & Assocs., 989 P.2d at 730.
[25] See Alaska R.App. P. 602(a)(2).
[26] 20 U.S.C. § 1415(f)(1)(A).
[27] AS 14.30.193(a) provides that "[a] school district or a parent of a child with a disability may request a due process hearing" and that "[a] request is made by providing written notice to the other party to the hearing." (Emphasis added.)
[28] See 34 C.F.R. § 300.661 (1998) (current version at 34 C.F.R. § 300.152 (2006)); see also 4 AAC 52.500(c)(6).
[29] See 34 C.F.R. § 300.661 (1998) (current version at 34 C.F.R. § 300.152 (2006)); see also 57 Fed.Reg. 44,794, 44,851 (Sept. 29, 1992).
[30] Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
[31] See, e.g., State, Dep't of Health & Soc. Servs. v. Valley Hosp. Ass'n, 116 P.3d 580, 583 (Alaska 2005).
[32] Laidlaw Transit, Inc. v. Anchorage Sch. Dist., 118 P.3d 1018, 1025 (Alaska 2005).