**MADELINE P. and Rex P., on behalf of their minor son, Manuel P., Appellants and Cross–Appellees,**

v.

**ANCHORAGE SCHOOL DISTRICT, Appellee and Cross–Appellant.**

Nos. S–13542, S–13561.

Supreme Court of Alaska.

Dec. 9, 2011.

---

Sonja D. Kerr, Public Interest Law Center of Philadelphia, Philadelphia, Pennsylvania, for Appellants and Cross–Appellees.

Bradley D. Owens and Cheryl Mandala, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellee and Cross–Appellant.

Before: CARPENETI, Chief Justice, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Parents challenged a school district's actions regarding their child's educational program under the Individuals with Disabilities Education Act (IDEA). A hearing officer found an IDEA violation but awarded less compensatory education services for the child than the parents requested. On appeal, the superior court affirmed the IDEA violation finding and the compensatory education award. The parents appeal, arguing that more compensatory education services should have been awarded; the school district cross-appeals, arguing that no compensatory education services should have been awarded. We affirm the superior court's findings regarding the school district's violation of the IDEA's procedural and substantive requirements and the compensatory education award.

## II. BACKGROUND

### A. Overview Of The IDEA

Under the IDEA federal funding is available to states providing children with disabilities a "free appropriate public education." [1] The IDEA defines "free appropriate public education" as publicly funded "special education and related services" meeting the state's educational standards and "provided in conformity with the individualized education program." [2] An individualized education program (IEP) is a written statement documenting a child's present functioning, special education needs, annual goals, program modifications, and other matters.[3] An IEP team, which can include the child's parents, teachers, school district representatives, appropriate experts, and the child, should meet "not less frequently than annually" to develop, review, and revise an IEP.[4] The IDEA also requires schools to provide the least restrictive environment by ensuring "to the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled." [5]

<span style="background:black">   </span> The IDEA requires participating states and their local educational agencies to comply with both its procedural and substantive provisions.[6] One procedural component requires an educational agency to provide parents "[w]ritten prior notice" whenever it proposes or refuses to initiate or change "the

---

**1.** 20 U.S.C. § 1412(a) (2006); *see Bickford v. State, Dep't of Educ. & Early Dev.*, 155 P.3d 302, 304 (Alaska 2007) (*Bickford*).

**2.** 20 U.S.C. § 1401(9) (2006); *see Bd. of Educ. v. Rowley*, 458 U.S. 176, 179, 187–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (discussing "free appropriate public education" as defined in Education of the Handicapped Act, 20 U.S.C. § 1401 (1976), IDEA's precursor).

**3.** 20 U.S.C § 1414(d)(1)(A)(i) (2006).

**4.** *Id.* § 1414(d)(1)(A)(i), (d)(1)(B), (d)(4)(A)(i).

**5.** 20 U.S.C. § 1412(a)(5).

**6.** 20 U.S.C. §§ 1412, 1414; *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034; *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1498–99 (9th Cir.1996).

provision of a free appropriate public education to the child."[7] But a procedural failure violates the IDEA "only when ... [it] 'result[s] in the loss of educational opportunity or seriously infringe[s] the parents' opportunity to participate in the IEP formation process.' "[8] Substantively, a free appropriate public education is provided under the IDEA if the educational agency: "(1) addresses the child's unique needs; (2) provides adequate support services so the child can take advantage of the educational opportunities"; and (3) follows the IEP.[9] But failure to follow an IEP does not violate the IDEA unless the failure is material, meaning "there is more than a minor discrepancy between the services provided to a disabled child and those required by the IEP."[10]

Parents may challenge "any matter relating to ... the provision of a free appropriate public education" for their child, whether procedural or substantive.[11] Unless the educational agency and the parents agree otherwise, the child "remain[s] in the then-current educational placement" (a "stay put") during the pendency of the challenge.[12] The IDEA allows states to develop specific procedures for challenges, but provides a framework of procedural safeguards.[13]

In *Bickford v. State, Department of Education & Early Development,* we described two distinct methods for alleging an IDEA violation.[14] First, any interested person or group may "initiate investigations of compliance with the IDEA by submitting an informal complaint" to the State of Alaska, Department of Education (Department).[15] Upon receiving a complaint, the Department conducts an independent on-site investigation, reviews additional information submitted by the complainant, and issues a written decision within 60 days, supported by factual findings and conclusions of law, determining whether an IDEA violation occurred.[16] Second, parents can request a due process hearing.[17] These hearings are intended to be expedited "formal adjudicatory proceedings in which parents and children have the rights to counsel, to present evidence, and to call, confront, and compel the attendance of witnesses."[18] Due process hearings "are de-

---

7. 20 U.S.C. § 1415(b)(3) (2006); *accord* 34 C.F.R. § 300.503 (2008). The prior written notice must include, among other things a description of the agency's proposed or refused action; an explanation of why the agency proposed or refused the action; "a description of each evaluation procedure, assessment, record, or report" on which the proposal or refusal is based; notice that the IDEA provides parents with procedural safeguards and advice on how to learn more about the IDEA and its safeguards; "a description of other options considered by the IEP [t]eam and the reason why those options were rejected"; and a description of the factors relevant to the proposal or refusal. 20 U.S.C. § 1415(c)(1).

8. *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.,* 496 F.3d 932, 938 (9th Cir.2007) (quoting *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23,* 960 F.2d 1479, 1484 (9th Cir.1992)); *see also Ash v. Lake Oswego Sch. Dist.,* 980 F.2d 585, 589 (9th Cir.1992) ("Of course, not every procedural flaw will give rise to a right of reimbursement."); *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 994 (1st Cir.1990) ("Before an IEP is set aside, there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits.").

9. *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 893 (9th Cir.1995) (citing *Rowley,* 458 U.S. at 188–89, 102 S.Ct. 3034).

10. *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J,* 502 F.3d 811, 815 (9th Cir.2007).

11. 20 U.S.C. § 1415(b)(6)(A).

12. *Id.* § 1415(j).

13. *Id.* § 1415(a)-(*o*); *see* AS 14.30.193 (allowing parents to request due process hearing and appeal result pursuant to AS 44.62.560); AS 14.30.272–.278 (providing procedural safeguards and directing school districts to ensure identification of children with disabilities, least restrictive environments, and individualized education programs, respectively).

14. 155 P.3d 302, 304 (Alaska 2007).

15. *Id.* at 305 (citing 34 C.F.R. §§ 300.660–.662 (1998)) (current version at 34 C.F.R. §§ 300.151–.153 (2010)).

16. *Id.*

17. *Id.* at 304–05.

18. *Id.* at 304. *But see J.P. v. Anchorage Sch. Dist.,* 260 P.3d 285, 288 (Alaska 2011) ("The due

signed to focus on disputes concerning discrete decisions involving specific children and the children's parents." [19]

A parent may challenge a hearing officer's due process hearing decision by filing a civil suit in federal or state trial court.[20]

Unlike typical administrative appeals, in an appeal from a due process hearing the IDEA directs the court to review the evidence independently, applying a "modified de novo" standard to questions of fact and a de novo standard to questions of law.[21] The Ninth Circuit has observed that "judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." [22]

## B. Facts And Proceedings

Manuel qualifies for special education services.[23] In late August 2006 Manuel's IEP team met to update his IEP for the upcoming year at a school in the Anchorage School District (ASD). The IEP provided for 27.5 hours of weekly special education and related services, including three hours of weekly writing instruction in the general education classroom. That year Manuel began second grade in Mardena Williams's general education classroom. Special education teacher Lisa LoSordo–Santo provided Manuel's writing instruction in Williams's classroom. Manuel's IEP team met at least monthly and as part of the team his parents, Madeline and Rex, were entitled to attend the meetings.

In October ASD learned that Williams would take previously unscheduled family leave for much of November. After an October 24 IEP meeting, but before an October 31 IEP meeting, LoSordo–Santo told Madeline that the rest of the IEP team wanted Manuel to receive writing instruction in LoSordo–Santo's resource room, rather than the general classroom, during Williams's family leave. Madeline told LoSordo–Santo she "wasn't happy" about the move. Madeline attended the October 31 meeting, but "[t]here was no discussion about making the decision" to move Manuel's writing instruc-

process hearing began on February 5, 2008, but it was not completed until July 18, 2008—after P.P. completed second grade.").

19. *Bickford*, 155 P.3d at 304.

20. AS 14.30.193(f) ("A hearing officer's decision under this section [governing due process hearings for children with disabilities] is a final administrative order, subject to appeal to the superior court for review ....").

21. 20 U.S.C § 1415(i)(2)(C)(i)-(iii) ("In any [civil] action brought under this paragraph, the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."); *see Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.*, 267 F.3d 877, 887–88 (9th Cir.2001) ("We review de novo the question of whether a school district's proposed individualized education program provided a free appropriate public education.... Complete de novo review, however, is inappropriate.... Because Congress intended states to have primary responsibility of formulating each individual child's education, we must defer to their "specialized knowledge and experience" by giving "due weight" to the decisions of the state's administrative bodies." (quoting *Rowley*, 458 U.S. at 206–08, 102 S.Ct. 3034)); *P.N. v. Greco*, 282 F.Supp.2d 221, 235 (D.N.J.2003) ("In reviewing administrative decisions in IDEA cases, a district court applies a de novo standard to questions of law. Administrative findings of fact are subject to a modified de novo standard of review ...." (internal citations omitted)).

22. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471–72 (9th Cir.1993); *see also id.* (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C.Cir.1988) ("[T]he district court's authority under § [1415(i)] to supplement the record below with new evidence, as well as Congress's call for a decision based on the 'preponderance of the evidence,' plainly suggests less deference than is conventional [in the review of agency actions.]"); *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir.1984) ("Congress intended courts to make bounded, independent decisions—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court ...."), *aff'd sub nom. Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)); *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir.1996) ("At bottom, the court itself is free to determine independently how much weight to give the administrative findings in light of the enumerated facts.").

23. We use pseudonyms for all family members.

tion—it was her understanding that the decision had already been made.

On November 3, Debora Schofield, the school's Department Chair for Special Education, emailed a summary of the October 31 meeting to Madeline, Rex, and the other IEP team members, noting that "[w]hen reviewing the agenda, [Madeline] requested that the meeting focus on developing a plan to be implemented in [Williams's] absence (November 8 to 28, 2006)." ASD never provided formal "prior written notice" about the proposed move of Manuel's writing instruction from the general classroom to the resource room.

Although Williams returned around November 28 and Schofield had understood that "upon [Williams's] return, [Manuel] would go back into the [general education] classroom for writing," Manuel's writing instruction continued in the resource room. LoSordo–Santo later testified that Manuel's continued placement in her resource room was "on a trial basis."

Nine days before a January 19, 2007 meeting, Schofield circulated an agenda suggesting the IEP team discuss Manuel's writing instruction location, specifically whether to amend the IEP or return the instruction to the regular classroom as stated in the current IEP. Notes taken during the meeting indicate Madeline participated in the discussion and expressed that she wanted an "inclusionary environment" for Manuel. The meeting notes reflect the IEP team amended Manuel's IEP to allow the instruction in either the general education or resource room. After the meeting, LoSordo–Santo prepared a "prior written notice" describing the IEP changes. Madeline later testified that she did not agree to that amendment.

The IEP team subsequently met on February 16, March 9, April 11, and April 13, 2007. During the March meeting the IEP team considered moving Manuel's writing instruction exclusively to the general education classroom. LoSordo–Santo prepared a "prior written notice" after the March meeting explaining why the IEP was not changed. A

"prior written notice" issued on April 17 indicated the IEP team had rejected "amending the IEP to change the '[l]ocation' of writing to the [general] classroom exclusively."

Madeline and Rex requested a due process hearing in April 2007. They alleged:

In the fall of 2006, [ASD] changed the placement of our son from the regular classroom to the resource room without prior written notice. In January, we disagreed with a [prior written notice] on the grounds that it was not based on [Manuel's] needs. Rather it was based on available personnel. The IEP team continued to try to reach a consensus through March 2007. In March 2007, the principal, Glen Nielsen interfered in the IEP process and would not allow the IEP team to complete an amendment[ ] that had finally met consensus.

Madeline and Rex later rephrased their allegations. They focused on the lack of prior written notice and proposed a new solution to establish a "stay put, and get [Manuel] back in the classroom for writing with the [special education teacher] teaching him in his regular education classroom." ASD responded that it had complied with the IEP, but agreed to provide writing instruction with the special education teacher in the general education classroom for the remainder of the school year.

A due process hearing commenced in June and concluded in November 2007. In January 2008 a hearing officer ruled that ASD's only IDEA violation occurred when Manuel's instruction continued in the resource room after William returned from leave. The hearing officer ruled that ASD's procedural failures to provide prior written notice before moving Manuel's writing instruction to the resource room in November 2006 or amending Manuel's IEP in January 2007 were not IDEA violations because the failures neither caused Manuel to lose educational opportunities nor created a significant restriction or infringement on his parents' opportunity to participate in the IEP formation process.[24] The hearing officer declined to consider a

---

24. *See* note 8, above, and accompanying text; 20 U.S.C. § 1415(f)(3)(E)(ii) (describing limited circumstances when hearing officer may find free appropriate education denial on procedural grounds).

new argument Manuel's parents raised at the hearing, that ASD's practice of sending "prior written notice" of IEP changes *after* they had already been implemented violated the IDEA, because they did not raise the issue in the due process complaint. But the hearing officer found that by failing to follow Manuel's IEP after Williams returned, ASD denied Manuel a free appropriate public education and thus violated the IDEA's substantive requirements during the period between Williams's return in late November 2006 and the January 2007 IEP amendment. The hearing officer awarded Manuel 15 hours of writing instruction in the general education classroom as compensatory education for the substantive IDEA violation.

The parents appealed to the superior court. The superior court independently found that ASD's procedural failure to provide prior written notice before moving Manuel's writing instruction or amending Manuel's IEP did not constitute IDEA violations. The superior court also upheld the hearing officer's ruling that a subsequent IDEA violation had occurred and affirmed the hearing officer's compensatory education award. In upholding these rulings, the superior court deferred to the hearing officer's "thorough and careful summary" of the evidence and explanation supporting the award. The superior court agreed with the hearing officer that ASD's practice of sending "prior written notice" after IEP changes had already been implemented was not raised in the due process complaint and therefore was not properly before the hearing officer or the court, but suggested that if it were, the court "would find this procedure illogical and not in compliance with the law." The superior court also concluded that it could not hear a new claim Manuel's parents raised, that ASD had not provided the least restrictive environment for Manuel, because it was not raised in the due process complaint and the hearing officer had not considered it.

Manuel's parents appeal, arguing that: (1) ASD's policy of providing prior written notice after an IEP change violates the IDEA; (2) Manuel was not placed in the least restrictive educational environment; (3) ASD violated the IDEA by failing to provide prior written notice before moving Manuel's writing instruction to the special education classroom; (4) ASD violated the IDEA by failing to provide prior written notice before amending Manuel's IEP in January 2007; and (5) Manuel deserved compensatory education for the entire time he received instruction in the resource room. ASD cross-appeals, arguing it did not violate the IDEA and Manuel should not have been awarded any compensatory education.

## III. DISCUSSION

### A. Standard Of Review

Our review of administrative proceedings generally follows the rule stated in *Bickford:*

> When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review the decision of the administrative agency. For questions of fact, we apply a "substantial evidence" standard, asking whether an agency's findings are supported by such relevant evidence as a reasonable mind might accept to support a conclusion. For issues of law not involving agency expertise, such as statutory interpretation and constitutional issues, we utilize a "substitution of judgment" or "independent judgment" standard.[25]

Manuel's parents argue the *Bickford* standard of review applies to our review of the superior court's decision. We disagree.

*Bickford* concerned an administrative agency's rejection of an IDEA complaint sent by a parent to the Department and the school district.[26] The school district appointed a hearing officer, while the Department turned the complaint over to the attorney general's office, which requested clarifica-

---

**25.** 155 P.3d at 309 (citations and quotation marks omitted).

**26.** *Id.* at 304–05. The school district in *Bickford* was unsure whether the complaint was a request for a due process hearing, a request to initiate an investigation, or a draft civil complaint. *Id.* at 305–06 & n. 16.

tion.[27] The parent's response to the attorney general's office invoked 34 C.F.R. §§ 300.660–.662 (1998), the regulation setting forth how a complaint requesting an investigation is made.[28] But the parent then stated in her response that she would pursue her claim in federal district court. The United States District Court for the District of Alaska dismissed that case, and the Ninth Circuit Court of Appeals ultimately affirmed.[29] Meanwhile, the parent filed a second complaint with the Department, alleging its handling of her initial complaint violated the IDEA.[30] The parent "abandoned her request for a due process hearing" during a settlement conference and none was held.[31] An investigator recommended dismissing the parent's complaint and requested that it be resubmitted in a "less confusing form."[32] The Commissioner of Education adopted that recommendation.[33] On appeal, the superior court applied the ordinary standard of review for administrative appeals and affirmed the dismissal.[34] The parent appealed, and we applied the standard of review discussed above.[35]

*Bickford*'s procedural posture is substantially different from this case. In *Bickford*, the superior court reviewed an administrative decision to dismiss the parent's case on purely procedural grounds.[36] Because there was no due process hearing and, therefore, no factual findings to review, the IDEA's modified de novo standard of review did not apply to the superior court.[37] Here the superior court reviewed a due process hearing and applied the modified de novo standard of review.

■ We agree with the Ninth Circuit's formulation of this modified de novo standard of review: in an appeal from a due process hearing, we will review the superior court's findings of fact "for clear error, even if those findings are based on the administrative record";[38] we will review questions of law de novo;[39] and we will review mixed questions of law and fact de novo, unless factual questions predominate.[40] The determination of whether a school district provided a student free appropriate public education is a mixed question of law and fact.[41]

## B. Issues Not Properly Raised

Under the IDEA "[t]he party requesting the due process hearing shall not be allowed

27. *Id.* at 306.

28. *Id.* at 306–07 & n. 17.

29. *Id.* at 307.

30. *Id.*

31. *Id.* at 308.

32. *Id.*

33. *Id.*

34. *Bickford v. State, Dep't of Educ.*, No. 3AN–99–3470 CI (Alaska Super., Oct. 4, 2004).

35. *Bickford*, 155 P.3d at 309.

36. *Id.*

37. *See* note 21, above, and accompanying text (discussing modified de novo standard).

38. *Napa Valley*, 496 F.3d at 937 (citing *Amanda J.*, 267 F.3d at 887); *see Van Duyn*, 502 F.3d at 817; *Wartenberg*, 59 F.3d at 891 (citing *Ash*, 980 F.2d at 588); *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir.1993) ("[W]e review the district court's decisions regarding whether to adopt the agency fact findings under the deferential, clearly erroneous standard.").

39. *Van Duyn*, 502 F.3d at 817 ("The district court's legal conclusions are reviewed de novo."); *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir.2005) (" '[S]tate hearing officers are not more experienced or expert than courts in interpreting federal statutes or the federal constitution,' and, therefore, 'deference is not warranted.' "); *Wartenberg*, 59 F.3d at 891 (citing *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir.1994)).

40. *Napa Valley*, 496 F.3d at 937 (citing *Amanda J.*, 267 F.3d at 887); *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 n. 4 (9th Cir. 2007).

41. *See P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 118 (2d Cir.2008) ("Whether the district court correctly applied the IDEA's statutory and regulatory provisions to the facts of a particular case is a mixed question of law and fact, which we also review de novo."); *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 611 (8th Cir.1997) ("Whether a school district has offered a free appropriate public education is a mixed question of fact and law and the district court's ultimate determination is reviewed de novo.").

to raise issues at the due process hearing that were not raised in the notice ... unless the other party agrees otherwise." [42] Neither the parents' original due process hearing request nor their rephrased request challenged ASD's general practice regarding prior written notice or ASD's alleged failure to place Manuel in the least restrictive environment.[43] We, like the superior court, therefore decline to address the issues as not preserved below: ASD's practice regarding prior written notice and whether Manuel was in the least restrictive environment.[44]

### C. We Affirm The Superior Court's Findings And Conclusions Regarding The Alleged Violations Of The IDEA's Procedural Requirements.

#### 1. The temporary move during Williams's absence

■ Manuel's parents allege ASD's failure to provide prior written notice before moving Manuel's writing instruction to the special education classroom violated the IDEA.[45] ASD failed procedurally by not providing prior written notice.[46] But Manuel's "IEP progress reports for the second quarter (Oct.–Dec. 2006) show he made some progress on his writing goals." LoSordo–Santo testified that Manuel's entire IEP team except Madeline agreed "[t]he environment [in the resource room] was more beneficial" to Manuel and that Manuel had difficulty focusing on the writing lessons in the general education classroom. Although Madeline disagreed, she acknowledged that she "respect[ed] all of [the IEP team's] opinions very much" and was "certain [the team was] looking after [Manuel's] best interests." Considering all of the evidence, the superior court did not clearly err in finding that Manuel lost no educational opportunity due to his temporary placement in the resource room.

Nor did the superior court clearly err in finding Manuel's parents maintained their opportunity to participate in his education planning during Williams's absence. Madeline "was fully informed" about the suggested move before it occurred. After receiving oral notification, Madeline attended and participated in IEP meetings on October 31 and November 17, 2006. Even if the team did not ultimately agree with Madeline, she nevertheless had the opportunity to participate in the process.

Because Manuel lost no educational opportunity and Manuel's parents maintained their opportunity to participate in planning his education, ASD's failure to provide prior written notice before temporarily moving Manuel's writing instruction to the resource room did not violate the IDEA.

#### 2. The January 2007 IEP amendment

■ When Williams returned from family leave in late November 2006, Manuel's IEP

---

42. 20 U.S.C. § 1415(f)(3)(B).

43. Manuel's parents claim their original due process complaint addressed the least restrictive environment issue. They state that they "mentioned on several occasions that part of [Madeline's] objection to [Manuel] being placed in the special education room was that he was not being educated with his peers." But the complaint's language indicates only an objection to the lack of prior written notice. In a follow-up email to the hearing officer rephrasing the request, Madeline discussed the lack of prior written notice, and concluded "I believe the original complaint stated the same, but maybe using different wording." She further stated "[s]ince the district changed the location of [Manuel's] services *without PWN* [prior written notice] he is entitled to Due Process." (Emphasis added.) Neither the original complaint nor the rephrased allegations suggested a claim relating to the least restrictive environment.

44. We echo the hearing officer's and superior court's concerns that immediate implementation of IEP amendments before issuance of a prior written notice seems to negate the "prior" in prior written notice.

45. Although free appropriate public education analysis is generally a mixed question of law and fact, factual questions predominate in the determination of whether a student lost educational opportunity or whether the parents lost the opportunity to participate. Therefore we apply the clear error standard of review. *Cf. Napa Valley*, 496 F.3d at 937 & n. 1 (describing standard of review for mixed questions of law and fact (citing *Amanda J.*, 267 F.3d at 887)).

46. *See Robb v. Bethel Sch. Dist. No. 403*, 308 F.3d 1047, 1049 (9th Cir.2002) (referring to prior written notice as procedural safeguard); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 58 (1st Cir.2002) (same); *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 853 (8th Cir.2000) (same).

still stated that his writing instruction was to occur in the general education classroom. The IEP team did not amend Manuel's IEP to allow writing instruction in either the resource room or the general classroom until January 19, 2007.

Manuel's parents implicitly argue that ASD's provision of "prior written notice" on January 19 after the IEP had just been amended constituted a procedural violation of the IDEA. But Manuel's parents were not deprived of the opportunity to participate in Manuel's education planning as a result of the untimely prior written notice. First, Madeline knew amending Manuel's IEP to reflect the new writing instruction location would be discussed because Schofield listed it on an agenda that was sent nine days prior to the meeting. Second, Madeline attended the January 19 meeting when the IEP was amended and participated in the discussion. Even though Madeline ultimately did not agree with the IEP team's conclusion to amend the IEP, she had ample opportunity to prepare for the discussion and express her position.

There is no evidence in the record that Manuel lost any educational opportunity because of ASD's failure to issue prior written notice. Manuel's parents do not point to any facts suggesting the IEP would have been different, thus changing Manuel's educational opportunities, had ASD issued prior written notice before the meeting.

Therefore the superior court did not clearly err in finding that ASD's procedural failure to provide prior written notice before changing Manuel's IEP did not violate the IDEA.

### D. We Affirm The Superior Court's Findings And Conclusions Regarding The Alleged Violations Of The IDEA's Substantive Requirements And Compensatory Education Award.

The superior court upheld the hearing officer's determination that failing to return Manuel to the general education classroom after Williams returned was a denial of free appropriate public education and the hearing officer's award of 15 hours of compensatory

writing instruction in the general education classroom. Both parties challenge these rulings.

### 1. The superior court's standard of review

As a threshold matter, in upholding the hearing officer's decision the superior court stated that it "reviews the hearing officer's order for abuse of discretion." However, it is clear from the context of the superior court's entire ruling that the court properly applied the modified de novo standard. The superior court initially described the proper standard of review as a modified de novo standard requiring an independent review of the evidence while according some deference to the expertise of the hearing officer:

The standard of judicial review under the IDEA is as follows. The court's decision is based on the preponderance of the evidence. The standard for review of a hearing officer's decision under the IDEA is much different from the standard used in other administrative reviews. Judicial review in IDEA cases differs substantially from judicial review of other agency actions in which courts generally are confined to the administrative record and are held to a highly deferential standard of review. . . .

However, complete de novo review is inappropriate because Congress intended states to have the primary responsibility of formulating each individual child's education, and we must defer to their specialized knowledge and experience by giving due weight to the decisions of the states' administrative bodies. Congress requires courts to apply a modified de novo standard when reviewing agency disposition under the IDEA. This modified de novo standard requires that a court must make an independent review of the evidence, but in so doing, it must give due weight to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education.

The superior court then discussed case law describing the relationship between the mod-

ified de novo standard and deference to administrative expertise:

The Ninth Circuit Court of Appeals has stated, ["T]he court in recognition of the expertise of the administrative agency must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole.["] [Citing *Parents of Student W. v. Puyallup School District* [47] ].

Deference is particularly appropriate where the hearing officer's review has been thorough and careful. [Citing *Park ex rel. Park v. Anaheim Union High School District* [48] ]. Finding the hearing officer's determinations were thorough and careful, where the hearing lasted over eight days, and the officer was engaged in the hearing and questioned the witness[es] to ensure the record contained complete information and that he understood the testimony, the [N]inth [C]ircuit [held] that deference should be given to that hearing officer's review.

And again in [*Matrejek v. Brewster Central School District* [49] ] the [District Court for the Southern District of New York] stated, the officer's decision is thorough and careful and therefore owed deference where it explores the evidence thoroughly, makes detailed factual findings that are supported by the evidence, and cogently explains the reasons for the conclusions reached, and is well supported by citations to the record.

Finally, the superior court took care to use the same language approved of in these cases in upholding the hearing officer's finding of a substantive IDEA violation and award of compensatory education. The court first summarized the hearing officer's ruling: the hearing officer determined (1) the failure to return Manuel to the regular education classroom after Williams returned to school was a violation of his IEP; [50] (2) the violation constituted a denial of free appropriate public education because Manuel's IEP included several behavioral goals that were predicated on his inclusion in the regular education room, and by denying him access to the regular classroom for three hours per week Manuel was denied an educational opportunity to improve on these goals; (3) the violation lasted from Williams's return from family leave in November 2006 until the IEP amendment in January 2007, a period of approximately six weeks; and (4) based on this violation, Manuel was entitled to 15 hours of compensatory education based on his removal from the regular classroom for three hours per week for approximately six weeks. The superior court then ruled:

The hearing officer's decision here is entitled to deference. It was not an abuse of discretion because the award *accorded with the purposes of the IDEA and was adequately explained and supported by the record.*

The hearing officer's [findings] of fact, which are approximately 15 pages long, are entitled to deference, because they are *a thorough and careful summary* of approximately 14 days of hearings and 2500 [pages] of exhibits. The hearing officer explained why he chose 15 hours and why the award was necessary in light of the ASD's failure to provide FAPE [free appropriate public education] to [Manuel]. (Emphasis added).

In short, the superior court correctly identified the unusual standard of review that it was required to apply in reviewing the hearing officer's decision and cited persuasive authority as to the proper level of deference to apply when confronted with a "thorough and careful" [51] decision that contains "detailed factual findings that are supported by

---

**47.** 31 F.3d 1489, 1494 (9th Cir.1994) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir.1987)).

**48.** 464 F.3d 1025, 1031 (9th Cir.2006).

**49.** 471 F.Supp.2d 415, 418 (S.D.N.Y.2007).

**50.** The hearing officer ruled that ASD was not out of compliance with Manuel's IEP until Williams's return because the initial move of his writing instruction to the resource room was "intended as a temporary measure, implemented on short notice due to Ms. Williams' family emergency."

**51.** *Park,* 464 F.3d at 1031.

the evidence"[52] and "cogently explains the reasons for the conclusions reached."[53] The court then found that the hearing officer's decision shared these attributes and affirmed. We therefore conclude the superior court's opening statement that it was reviewing the hearing officer's decision for an abuse of discretion was an unfortunate but immaterial misstatement.

### 2. Material failure to comply with IEP

■ ASD argues that Manuel should not receive any compensatory education because moving Manuel's writing instruction to the resource room did not constitute a material failure to comply with his IEP. "A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP."[54] "[T]he materiality standard does not require that the child suffer demonstrable educational harm in order to prevail."[55]

The hearing officer rejected ASD's argument that its failure to return Manuel to the general education classroom for writing instruction was not material, reasoning:

> the process during this interim period was tainted by the manner in which the team first characterized the change of location as a temporary measure, based entirely on the need to adjust for Ms. Williams' absence, and then appeared to shift to other justifications for the change after her return to school.

We agree. ASD agreed to provide Manuel writing instruction among his peers in the general education classroom, temporarily moved him to the resource room due to staffing issues, and then unilaterally decided to prolong the temporary adjustment without amending his IEP. Under these circumstances, this failure to comply with Manuel's IEP was more than a "minor discrepancy."

Accordingly, we affirm the superior court's ruling that ASD's failure to return Manuel to the general education classroom after Williams returned to school in violation of his IEP was a denial of free appropriate public education.

### 3. Compensatory education award

Manuel's parents argue that Manuel should receive 78 hours of compensatory education for the entire time he received writing instruction in the resource classroom, even after the January 2007 IEP amendment. They argue that if ASD had complied with the prior written notice requirement, Manuel would have been in the general education classroom for those 78 hours. Because we have affirmed the superior court's ruling that ASD's only IDEA violation was its failure to comply with Manuel's IEP during the six-week period after Williams returned from family leave in November 2006 until his IEP was amended in January 2007, we also affirm the superior court's ruling that the compensatory education award was properly limited to this time period.

## IV. CONCLUSION

We AFFIRM the superior court's ruling that ASD did not violate the IDEA by failing to provide prior written notice before moving Manuel's writing instruction or amending his IEP. We also AFFIRM the superior court's ruling that ASD violated the IDEA by failing to comply with Manuel's IEP from November 2006 until the January 2007 amendment and AFFIRM the award of 15 hours of compensatory education.

FABE, Justice, not participating.

52. *Matrejek,* 471 F.Supp.2d at 418.

53. *Id.*

54. *Van Duyn,* 502 F.3d at 822.

55. *Id.*